Mr. Santos is a native and citizen of Guatemala, who fled Guatemala at the age of 11 and applied for asylum here in the United States. Both the immigration judge and the board denied his claim for asylum, stating that he did not demonstrate that he was persecuted on one of the five grounds. We believe that the board's determination wasn't supported by reasonable, substantial evidence that was presented on the record. We believe that Mr. Santos did present sufficient evidence that he was persecuted on account of one of the protected grounds, specifically imputed political opinion and social group. The board, we believe, did not use the proper standard in this case in defining on account of. In their decision, they stated that he couldn't demonstrate that he was persecuted on one of the grounds. There was too many gaps in his testimony, and it couldn't be filled with speculation. And they said that he did not know who killed his father, why he was killed, or he did not know the identity of the intruders that attacked him. They were in uniform, I would think. Yes, Your Honor. And we believe that they didn't use a proper standard, because under Ninth Circuit case law, you don't need to show with precision who attacked you. You need to show, you need to look at the facts of the case to see if there was some evidence, some evidence that was provided to show motivation falling under one of the grounds. And in this instance case, we believe that there was sufficient circumstantial evidence to infer that he was persecuted on one of the, two of the specific grounds. In this case, his father was an active member of the UCN party. He did testify to that, that he was an active member, and he testified that he was always with his father, and he was considered a member by association, because he was always with his father. He attended meetings with his father. His father was brutally murdered. A few weeks shortly after the murder, Mr. Santos was brutally attacked at his home by six men, and they were asking him to produce specifically UCN documents. We believe that that's sufficient circumstantial evidence to demonstrate that he was persecuted on account of. There's no other reason in this case for an 11-year-old child to be attacked, have his finger chopped off. It's not just coincidence that his father was attacked, and then three weeks later, he's attacked. Was there any other motive for the attack, such as robbery or vandalism? I would not believe so, specifically because they were asking for UCN documents, and when he did not produce those UCN documents, that's when they attempted to, that's when they did bring out a machete and chopped off his finger. I think we have your argument at hand. Why don't you save your time for a bottle, and I'll let you respond. We believe that the board made a correct determination, and the only determination that could have been made on the evidence that was given. That was evidence that was essentially based on speculation. The immigration judge was extremely compassionate to this petitioner, and the board noted the facts of the case, but indicated that there was too much speculation. First of all, the IJ made favorable credibility findings as to the petitioner, correct? That is correct, Your Honor. But the board found that the petitioner was not persecuted in the past, nor did he have a well-founded fear of persecution in the future, based on political opinion or a particular social group. Did you make any findings as to why, other than political, imputed political opinions, his finger had been chopped off? I'm sorry. Pardon me. Let me, I'm sorry. Did the IJ make any findings as to what other circumstances led the uniformed men to chop off his finger, other than the imputed political persuasion of his father? I believe that the petitioner testified that they had on uniforms, he thought they had on uniforms under their clothing. Pardon me. I didn't ask about the evidence. I asked whether there were any findings made by the IJ that there was a motive other than the imputed political persuasion for the reason of chopping off his finger, a part of his finger. No. The question was asked of opposing counsel about were there any other possibilities surrounding this incident at which the petitioner's finger was chopped off. And that, there were, according to the petitioner, he said that they were looking for rifles, as well as documents, and that they took money from his person. So... Yes. How much? He said not much. But he did indicate that they did, in fact, take money. And there was nothing... Do you think it was necessary to chop off his finger to take the money that he had, the 11-year-old boy had? Well, he did not testify as to who these people were. He said he did not know why his father was killed. Well, weren't they in uniform? He said in his testimony that he believed that they had uniforms on under their clothing. Wasn't that enough? Isn't that enough? To show who they were. Well, he indicated that, yes, that they were wearing... Well, that's what we've got to go on. ...some kind of uniform. I wanted to ask you one question. Oh, very vague. Can I ask you, you're familiar with the matter of Chen? Yes. It's a great humanitarian decision by the board that someone, someone or some family has suffered atrocious persecution. We can give the person asylum, even though he may not face persecution in the future. Well, the board didn't seem to consider that. Shouldn't we give the board a chance to consider the matter of Chen? Well, the immigration judge certainly specified that, and the board said they concurred with the immigration judge's finding that there was not past persecution or a well-founded fear. No, but this humanitarian reason seems to go beyond that and say if the person has suffered atrocious persecution, the board can give them asylum. That is true, that the board did not specifically mention the matter of Chen. Well, why don't we send it back and give them a chance? Because isn't this atrocious? Well, it certainly, I think all the way through this case, it's obvious that this petitioner has greatly suffered, Your Honor. And the question was whether it was on account of the court would feel that the board should address the humanitarian issue. Certainly, then the case could go back for that kind of express designation by the court that the board look at that. Well, thank you. Because they did not. Let me ask you along that line, picking up on Judge Nunez's questioning, if we do send it back to the board for their consideration of a humanitarian asylum because of atrocious persecution in the past, does the board have discretion to deny that type of asylum for reasons such as we didn't think that his grades are good enough in school or he didn't participate in after school activities or whatever? Does the board have discretion to deny humanitarian asylum? Certainly, Your Honor. Yes, it does. I don't quite understand whether you're asking about his behavior in the United States or his behavior because I think there's quite a lot of evidence in the record to show that he has survived remarkably here in the United States. Well, going back to the on account of, I mean, you have, if it had been a simple robbery, I think I would have said, no, I would have said, I don't know who those people are. I don't know who they are. I don't know who they are. Well, you know, that's the problem with these cases. I mean, persecutors don't usually knock on the door and say, you know, I'm so and so and I'm here to persecute you within the meaning of the asylum statute. They were breaking into the house. Yeah, they banged on the door and they said, give me the documents and then he cut off his finger and then they robbed him. Well, they broke into the house late at night, as I recall from the record. They did ask for the documents as well as asking for rifles and as well as taking money from him, but there is nothing to indicate that he said anything to them, that they said anything to him to connect him to a political opinion or an imputed political opinion. And the immigration judge was very clear that, she said, I just, there's so much of a gap here that I just cannot fill in with speculation. That would be wrong to do. And the petitioner does not contend that because of his age, he deserves some kind of special, a lowered burden, which he would not have in any event, but he, he. We've had some other cases though, where people are almost randomly pulled off a bus and beaten and suffer injuries. And then they're sort of later targeted and connected with their family that we've granted some relief on. Now here you have a much more close nexus because you've got the father killed. They come looking for the documents and whether you think it's revenge or punishment, it may raise a rise level of past persecution on account of either imputed opinion or a member in the social group. I mean, at least you've, you've got, it's certainly a persecution. And the only problem is whether it's on account of. Well, the board, we know, you know, at least their motives in coming over were political. And then you get down to, did they pick him up by his finger because he was the son of a father that was in, to whom they were, who was in political opposition to them? And they did say they would be back. And they said they would be back. So you almost have to speculate the other way to say, oh no, this was just a random act of violence. Your honors, it's very true. There, the asylum is a heavy burden. It is a very heavy burden. It's not something that's given lightly. And the petitioner was given a full opportunity to testify to what happened. And he could not fill in these gaps. And the immigration judge, although she stated that she was extremely compassionate to this person, she could not fill in that speculation herself. And then the board agreed. And it's the board's decision that we're, we're here defending today. And we're going to hold that, we would like to ask the court to hold that the court should affirm the board's decision in this case. Thank you. Other comments? Briefly, again, going back on account of respondents in their brief, decided to First Circuit case law. There's a lot of Ninth Circuit case law that discusses this on account of, and, and you've stated in Ninth Circuit case law that, that there's, you don't hold people to an unreasonable standard of knowing with precision. And Mr. Santos will not know with precision why or who attacked him, but we can deduce from all the facts presented that it's because his father's membership in the UCN group. You've also held that, that, that, that, that the prosecution can be on account of political opinion, where there appears to be no other logical reason for the persecution at issue. In this case, I don't see any other logical reason for an 11-year-old to be brutally attacked and threatened and told that they would come back and told them to produce UCN documents. With respect to the matter of Chan, if you cannot decide that issue, yes, it should be remanded to the Supreme Court. I believe that the circumstances were atrocious. No matter Chan, there was ongoing persecution here. It didn't happen for years, but what happened is something that shouldn't be happening to an 11-year-old child. To have men accost you, beat you, hit you, and chop your finger off. I mean, he lives with that every day. He looks at it. He testified to that. He remembers every day. And he has nightmares about this every night. Thank you.
judges: Noonan, Thomas, Bea